Barrow & Thomas and H. T. Lewis, for defendant.

---

TIPPIN, administrator, v. BROCKWELL. ·                89   467
                                                       91   793

1. In a suit against an administrator to recover wages for annual services rendered the intestate during several successive years, evidence at the trial showing that there was a special contract between the plaintiff and deceased fixing the wages for the last year at $200 would authorize the jury to infer a like contract, not in excess of $200 per annum, for each preceding year. This being so, it was error to charge the jury that if the services for the years preceding the last were rendered and not paid for, the plaintiff would be entitled to recover their reasonable value. The instruction should have been that this would be the measure of recovery if there was no special contract applicable to those years.
2. The general rule which puts the burden upon the party alleging payment to prove it, applies to an administrator in a suit for services rendered his intestate. Lerche v. Brasher, 104 N. Y. 157; Barbour, Law of Payment, pp. 253, 292–3.

June 20, 1892.                                    *Judgment reversed.*

Contract. Wages. Administrator. *Onus.* Before Judge JENKINS. Morgan superior court. September term, 1891.

On August 8, 1890, Brockwell brought suit against Tippin as administrator of Zachry (who died on February 27, 1889), on an account for $3,648.95, less a number of credits amounting to $152.25; the items of the account being a due-bill for $98.95, dated July 14, 1881, wages at $400 per year for the years 1881–1888 inclusive, and wages for 1889, $350. On demurrer all the charges made for services prior to 1885, and the due-bill, were stricken as barred. The jury, on March 7, 1891, found for the plaintiff $1,500 principal, and $376.74 interest. The defendant's motion for a new trial was overruled. The grounds of the motion are, that the verdict is con-

trary to law and evidence, and is excessive; that the court refused to grant a nonsuit at the close of the testimony for the plaintiff, because there was no evidence showing any indebtedness to him on the part of the decedent at the time of his death; and that the court erred in charging as follows: " If you believe from the evidence that plaintiff rendered services to defendant's intestate, A. C. Zachry, for the years 1885, 1886, 1887 and 1888, then you should find for the plaintiff the reasonable value of these services according to the proof, unless it further appears from the evidence that the same in some way has been settled, discharged and satisfied. If you find from the evidence that plaintiff rendered services for these years, then he is entitled to recover *prima facie* for such services, whatever they were worth. It devolves upon the plaintiff then to show that he has rendered the services, and their value. It then devolves upon defendant [to show] that they have been settled for; that is, that such services had been settled for."

The testimony for the plaintiff showed as follows: In the fall of 1888, A. C. Zachry came to witness and talked about having him to superintend his farm for the next year, and said that plaintiff had lived with him for fourteen or fifteen years, and that he owed plaintiff $5,000 or $6,000 for superintending his farms; not knowing whether plaintiff would stay with him next year or not, Zachry wanted to hire witness; that he then had the money in bank to pay plaintiff all he owed him. This is all the conversation witness ever had on the subject with Zachry. After Christmas they met again, and Zachry told him that plaintiff had agreed to stay with him, and that he would not want witness. Zachry told witness what he wanted him to do, and witness said if plaintiff did such service it was worth $350 to $500, but he would not do it for $600 per annum. Another witness testified that plaintiff lived in the same house with

Zachry on one of his farms, and assisted him in superintending and managing his farm interests. He was extensively engaged in farming, and the last two or three years of his life drank a great deal. He owned three or four farms, all of which adjoined each other. Witness does not know exactly what plaintiff's duties were; he just saw him on said farms and on the road going from place to place when hands were at work, and he seemed to be exercising a general supervision. He lived with Zachry a good many years. Witness learned from Zachry and plaintiff that Zachry ran on his home-place from seven to nine plows for standing wages. On his other farms he had tenants and croppers. The services of plaintiff were worth about $300 to $400 a year; he had superintendence generally of about twenty to twenty-five mules; he gave out provisions to the hands, attended to the feeding of the stock, and supervised the whole thing.

The testimony for the defendant showed as follows: Zachry was a man of large means. Plaintiff lived in the house with him on his farm for many years. He gave his farming interests his personal supervision, and plaintiff assisted him. He ran seven or ten plows on his home place. He had other farms adjoining on which he had tenants and croppers. He and plaintiff gave their attention to the standing wages crowd, and once a month weighed out rations to tenants and croppers. Sometimes one of them, sometimes the other, and sometimes both performed these duties. Zachry boarded plaintiff, furnished him a room and had his washing done. His services were not worth exceeding $150 per annum. In the fall before Zachry died, plaintiff stated to a witness that he was getting $14.50 per month wages from Zachry for his services. (Plaintiff denied this.) Zachry was a prosperous and money-making man; almost always had on hand a large amount of cash. Neither Zachry nor

plaintiff had any supervision or anything to do with the
tenants and croppers, beyond what is above stated.
When Zachry died the defendant came immediately to
his house and there found the plaintiff; ascertained from
him that there was no bill that he knew of; he turned over
to defendant the things that were there, among the rest
$1,500 in money in a box. Defendant was appointed tem-
porary administrator, and took charge of the estate.
Plaintiff turned over to him Zachry's books and papers
concerning his farming business; and defendant deter-
mined to go on with the same, and applied for per-
manent letters. Two or three days after he was ap-
pointed as such, he had plaintiff to assemble all the
standing wages hands, croppers and tenants, and de-
fendant asked each one of these what he was to receive
under his contract with Zachry for that year, what
land he was to cultivate and what rent he was to pay;
and upon receiving the information, entered the same
upon the book, the plaintiff being present. He then
turned to plaintiff and asked him what he was to get, and
he replied $200. The hands, croppers and tenants were
dismissed, and defendant asked plaintiff if Zachry owed
him anything; he answered evasively, and finally said
" a thousand or two." Afterwards he said there were a
great many liars in the country, whereupon defendant
asked him, "What is the matter now," and he said that
some one had said he had told that Zachry owed him
$4,000 or $5,000, and he said it was every word a lie.
Defendant again asked him if Zachry owed him any-
thing, and he again evaded it by saying a thousand or
two. (Plaintiff testified that he did not remember to
have had any such conversation.) Defendant told him
time and time again that he had a plenty of money on
hand, several thousand dollars; that he was paying
every debt honestly due by Zachry, and all a creditor
had to do was to present his claim in proper form, show

him that it was honestly due, and it would be promptly paid; that if Zachry owed him anything, to make out his bill, present it, and if right, it would be instantly paid.   He never made out or presented defendant with a bill.   After defendant had discharged him his attorney presented one.   Once he drove off in the neighborhood, and when he returned there was a paper in the buggy; he asked defendant if it was his paper, defendant looked at it, saw that it was an account in plaintiff's favor against Zachry for a large sum, showed it to him and told him he (defendant) never saw it before.   With much confusion he took it from defendant and put it in his pocket.   Defendant again said to him, "If Zachry owes you anything, put your claim in shape, present it to me, and it will be paid."   He never presented any claim.   Defendant found out that Zachry in person kept his farm books; that plaintiff could not do so; he could not write legibly ; and it became necessary for defendant to leave his home in another county, stay on the farm and give it his personal supervision.   Plaintiff was of so little service that on October 11, 1889, defendant discharged him and paid him, taking a receipt for $104.54, being balance in full for services rendered from January 1st to October 11, 1889, at the rate of $200 per annum.

FOSTER & BUTLER, for plaintiff in error.
McHENRY, NUNNALLY & NEEL, contra.